SCHACHTER v. INTERBOROUGH RAPID TRANSIT CO.

(Supreme Court, Appellate Division, First Department.    July 7, 1911.)

1. STREET RAILROADS (§ 96½*)—ELEVATED RAILROADS—CARE REQUIRED.
   A railway company operating an elevated railroad in the streets of a city owes to persons lawfully in buildings adjacent to the streets only the duty of exercising ordinary care for their protection.
   [Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 96½.*]

2. MASTER AND SERVANT (§ 330*) — INDEPENDENT CONTRACTORS — ELEVATED RAILROADS—EVIDENCE.
   Where, in an action against an elevated railroad company for injuries to a person in a building adjacent to the street on which cars were operated, in consequence of her attempting to escape from danger from explosions caused by a short circuit produced by contact between a cable of a derrick and the shoe of a car of a passing train, the company

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

claimed that the explosion was caused by acts of employés of a contractor to lower the elevated structure pursuant to a contract between the company and the city, and there was no evidence that the manner in which the work was done was not safe if proper care was exercised by the employés of the contractor operating the derrick, evidence that the derrick was so placed that the cable when suspended from it would not come in contact with any part of a passing train, and that, if the lower end of the cable was attached to a part of the structure underneath the track, it might be brought in contact with the shoe of a car of a passing train if moved while the train was passing, and that the short circuit could not otherwise be produced, and that the derrick was operated by the employés of the contractor, though the work of lowering the structure was conducted under the supervision of the engineers of the company, was admissible to show negligence of the employés of the contractor so as to relieve the company from liability.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1271; Dec. Dig. § 330.*]

3. NEGLIGENCE (§ 136*)—RES IPSA LOQUITUR—PRESUMPTIONS OF NEGLIGENCE.
The rule of res ipsa loquitur does not create a presumption of negligence as a matter of law, but the facts as to the happening of the accident complained of are sufficient to present a prima facie case on which the jury may, if no contrary evidence is introduced, infer negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 285; Dec. Dig. § 136.*]

Appeal from Appellate Term.

Action by Pauline Schachter against the Interborough Rapid Transit Company. From a determination of the Appellate Term (70 Misc. Rep. 558, 127 N. Y. Supp. 308) affirming a judgment of the City Court for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Bayard H. Ames (John Montgomery and Walter Henry Wood, on the brief), for appellant.

Moses Feltenstein, for respondent.

LAUGHLIN, J. On the 4th day of October, 1909, the plaintiff was working as a milliner on the second floor of the building known as No. 17½ Division street, in the borough of Manhattan, New York, and sustained personal injuries in an effort on her part and on the part of others employed with her to escape from impending danger resulting from explosions, flame, and smoke caused by a short circuit produced by contact between the cable of a derrick and the shoe attached to an electric car on a passing train on the Second Avenue Elevated Railroad of the appellant in the street adjacent to the building on the west, and this action is brought to recover her damages.

The contention of the appellant was that the short circuit was caused by the acts of an employé or employés of the Terry & Tench Company, which had a contract with the appellant for lowering its elevated structure at the place of the accident, pursuant to the requirements of a contract made between the city of New York and the appellant.

Evidence offered by the appellant to show the making of these contracts and that the derrick to which the cable was attached was operated by the employés of the Terry & Tench Company was excluded, and an exception was duly taken to the ruling. The evidence tended to show that the work of lowering the elevated structure was conducted under the supervision of engineers employed by the appellant, and tended to show that the derrick was actually operated by the employés of the contractor, but the appellant was not permitted to make the proof on this point entirely clear. The evidence shows that the derrick was so placed on the easterly side of the track that the cable when suspended from it would not come in touch with any part of a passing train, and that, while the derrick and cable were in the same position they occupied at the time the train in question was permitted to pass, many other trains had passed in safety. It appeared that, if the lower end of the cable were attached to a part of the structure underneath the track, it might be brought in contact with the shoe of a car of a passing train if the cable was moved while the train was passing, and that a short circuit could not otherwise have been produced. That the cable was moved while the train was passing is demonstrated by the fact that other like shoes, projecting an equal distance over the rail on the same side of the train which consisted of seven cars, passed the cable without contact, and that the contact was between the rear shoe of the rear car of the train and the cable. There is some slight conflict in the evidence as to whether or not there was a third rail at the point in question; but the testimony of those in a position to know best all tends to show that there was no third rail at that point at the time of the accident, and there is no evidence that the shoes on the easterly side of this train which was going northerly were in contact with a third rail. The shoes extended about 17 or 18 inches beyond the rail of the track on which the train was running and to within about one inch of the ends of the cross-ties, but not beyond them. The gin pole of the derrick and the cable, when in a perpendicular position, were beyond the ends of the cross-ties. The cable could only be brought in contact with the shoe of a car by pulling a load from underneath the track, which might bring it between the ends of the cross-ties, or by allowing it to slacken so that it would not maintain a perpendicular position. There is no evidence that the manner in which the work was being done was not safe if proper care had been exercised by those operating the derrick.

[1] The plaintiff was not a passenger, and the only duty which the appellant owed to her was that which it owed to all people lawfully in the vicinity to exercise ordinary care.

[2] If the evidence thus excluded had been received, the jury might have found that the only negligence was on the part of employés of the contractor. We think it was error to exclude it.

We are also of opinion that the court erred in instructing the jury with respect to the law applicable to the case. The last instructions given to the jury were contained in a request made by counsel for the plaintiff, which the court charged as follows:

"That if the jury find while said plaintiff was sitting at her work near the window facing the tracks of the defendant, on the second floor, of 17½

Division street, and at that said time one of the trains of the defendant proceeded and passed the aforesaid premises, and while opposite the aforesaid window where the said plaintiff was sitting, three terrifically loud reports issued from underneath the aforesaid train, followed by three large streams of fire, which struck and entered into the window at which the said plaintiff was sitting, and causing a panic among the employés who were sitting in the room with the said plaintiff, as a result of which said plaintiff and the said other employés became frightened and ran from the room, causing the plaintiff to be thrown down, whereby she sustained severe injuries, there arises a presumption of negligence on the part of the defendant."

[3] Counsel for the appellant duly excepted to this charge, whereupon counsel for the plaintiff said, "Which may be explained or rebutted," to which the court replied, "Which may be explained; yes." The court in the main charge in effect applied the rule of res ipsa loquitur to the case, and an exception was also duly taken thereto. In the circumstances, in view of the work of lowering the elevated structure which was being carried on, it is at least doubtful whether the rule of res ipsa loquitur was applicable to the case at all, but, if it were, it is quite clear that it does not aid in fixing the responsibility for the short circuit on the appellant. Moreover, the court in these instructions overstated the rule, and, in effect, charged the jury that the facts stated in the request gave rise to a presumption of negligence on the part of the defendant as matter of law; whereas, even if the rule of res ipsa loquitur were applicable, a presumption of negligence as matter of law does not arise, but the facts with respect to the happening of the accident are sufficient to present a prima facie case, upon which the jury may, if no evidence be offered on the part of the defendant, infer negligence.

It follows, therefore, that the determination of the Appellate Term should be reversed, and the judgment and order of the City Court should be reversed and a new trial granted, with costs to appellant, in this court and in the Appellate Term, to abide the event. All concur.

INGRAHAM, P. J. I concur with Mr. Justice LAUGHLIN, but I also think that the facts were not sufficient to justify a finding that the defendant was guilty of negligence, and therefore the complaint should have been dismissed.